UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RBG MANAGEMENT CORP.,

                Plaintiff,

-against-

VILLAGE SUPER MARKET, INC.,

                Defendant.

Case No. 1:22-cv-07996 (JLR) (OTW)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

      RBG Management Corp. d/b/a Morton Williams Supermarkets ("Morton Williams") sued Village Super Market, Inc. ("Village"), alleging, among other things, tortious interference with a contract. ECF No. 1 ("Compl."). Morton Williams objects under Federal Rule of Civil Procedure ("Rule") 72(a) to Magistrate Judge Ona Wang's order granting Village's motion to transfer venue to the United States District Court for the District of New Jersey. ECF No. 92 (the "Transfer Order"). For the following reasons, the Court overrules Morton Williams's objections and affirms the Transfer Order.

## BACKGROUND

      The Court presumes familiarity with the relevant facts and includes only those necessary to resolve Morton Williams's objections. In this case (the "New York Action"), Morton Williams alleges that Village used its influence as a member of a grocery-product cooperative, Wakefern Food Corp. ("Wakefern"), to induce Wakefern to breach its long-term agreement to supply Morton Williams with private-label grocery products. Morton Williams and Wakefern's agreement contains a forum-selection clause providing that "all claims and disputes arising out of or in connection with this agreement shall be adjudicated in" New Jersey state or federal court. ECF No. 71-5 (the "Supply Agreement") § 14(a) (further capitalization omitted). On

September 14, 2023, the Court dismissed all but one of Morton Williams's claims: its claim that Village had tortiously interfered with the Supply Agreement by inducing Wakefern to breach that agreement. *See generally RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, --- F. Supp. 3d ----, 2023 WL 5976273 (S.D.N.Y. Sept. 14, 2023).

On November 2, 2023, Wakefern – which is not a party to the New York Action – sued Morton Williams in the District of New Jersey. *See* Complaint, *Wakefern Food Corp. v. RBG Mgmt. Corp.*, No. 23-cv-21825 (D.N.J. Nov. 2, 2023) (the "New Jersey Action"); ECF No. 71-3 ("Wakefern Compl."). There, Wakefern alleges that Morton Williams, not Wakefern, breached the Supply Agreement. Wakefern Compl. ¶¶ 33-51. In its answer in the New Jersey Action, Morton Williams has asserted a counterclaim against Wakefern for breach of contract. *See* ECF No. 90-1 ¶¶ 100-104.

On November 8, 2023, Village moved to transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). ECF No. 71. On January 4, 2024, Judge Wang granted Village's motion to transfer venue. Transfer Order.[1] Morton Williams filed timely objections to Judge Wang's order on January 18, 2024. ECF No. 95 ("Obj."). Village filed an opposition to Morton Williams's objections on February 1, 2024. ECF No. 96 ("Resp.").

## LEGAL STANDARD

In reviewing a magistrate judge's decision on nondispositive matters, including venue disputes, the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see Cruz v. Decker*, No. 18-cv-09948 (GBD) (OTW), 2019 WL 4038555, at *2 (S.D.N.Y. Aug. 27, 2019)

---

[1] The undersigned referred this case to Judge Wang for general pretrial supervision on July 27, 2023. ECF No. 41.

("Venue motions filed in other civil cases, *i.e.*, under § 1404(a) . . . have been treated as non-dispositive motions that can be decided by a magistrate judge."), *aff'd*, 2019 WL 6318627, at *4 (S.D.N.Y. Nov. 26, 2019).  A magistrate judge's decision is clearly erroneous when "on the entire evidence, [the district court] is left with the definite and firm conviction that a mistake has been committed."  *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quotation marks and citation omitted); *accord Bromfield v. Bronx Leb. Special Care Ctr., Inc.*, No. 16-cv-10047 (ALC), 2020 WL 495460, at *1 (S.D.N.Y. Jan. 30, 2020).  A magistrate judge's ruling is contrary to law when "it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (brackets, quotation marks, and citation omitted).  "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion."  *Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-cv-04546 (LGS), 2018 WL 501605, at *1 (S.D.N.Y. Jan 19, 2018) (citation omitted).

## DISCUSSION

**I.     Section 1404(a) and the First-to-File Rule**

A district court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  "District courts have broad discretion in making determinations of convenience under Section 1404(a)."  *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)).  Transfer may also be *sua sponte*.  *See id.* at 83, 90 (affirming *sua sponte* transfer); *Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013) ("The power of district courts to transfer cases under Section 1404(a) *sua sponte* . . . is well established." (citation omitted)).

Courts apply a two-part test to determine whether to grant a motion to transfer venue. First, as a threshold inquiry, the court must decide "whether the case could have been brought in the proposed transferee district." *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 250 (S.D.N.Y. 2017). Here, there is no dispute that this case could have been brought in the District of New Jersey given that Village is a New Jersey corporation with its principal place of business in New Jersey. *See* Compl. ¶ 16; 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.").

Once that requirement is established, courts turn to whether the transfer is "in the interest of justice and convenience of the parties and witnesses." *Sentegra, LLC v. ASUS Comput. Int'l*, No. 15-cv-03768 (GHW), 2016 WL 3093988, at *2 (S.D.N.Y. June 1, 2016) (citation omitted). In determining whether to transfer a case, courts consider, among other things, "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Corley*, 11 F.4th at 89 (quoting *D.H. Blair & Co.*, 462 F.3d at 106-07). Courts may also consider the forum's familiarity with the governing law, trial efficiency, and the interests of justice. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am. Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Sentegra, LLC*, 2016 WL 3093988, at *2.

"As a general rule, where there are two competing lawsuits, the first suit should have priority." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (quotation marks, brackets, and citation omitted). However, the first-to-file rule contains two

4

exceptions: "(1) where the 'balance of convenience' favors the second-filed action, and (2) where 'special circumstances' warrant giving priority to the second suit." *Id.* at 275 (citations omitted). In this way, "the first-filed rule does not constitute an invariable mandate" but rather is a "presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Id.* (quotation marks and citation omitted). To determine whether the balance of convenience warrants a departure from the first-filed rule, the court applies the same factors as in deciding whether transfer is appropriate under Section 1404(a). *Id.*

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). A forum-selection clause adjusts the typical Section 1404(a) analysis in three ways: (1) "the plaintiff's choice of forum merits no weight"; (2) "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests"; and (3) "a § 1404 transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations." *Id.* at 63-64. "[B]ecause the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (further brackets, quotation marks, and citation omitted).

II.     **The Magistrate Judge's Transfer Opinion**

After laying out the correct general standard to consider a Section 1404(a) motion, Judge Wang concluded from the factors outlined above that the "balance of convenience favor[ed] the second-filed action." Transfer Order at 4; *see id.* at 2-4. Judge Wang found that five factors were neutral or otherwise unclear in this case: the "convenience of witnesses," "the location of

5

relevant documents and ease of access to sources of proof," "the availability of process to compel the attendance of unwilling witnesses," the "locus of operative facts," and "the relative means of the parties." *Id.* at 4-5. Judge Wang found that Morton Williams's "choice of forum, New York, weigh[ed] against transfer" but that the "convenience of the parties" strongly favored it. *Id.* As to the latter factor, Judge Wang noted that Morton Williams could not claim inconvenience where it "willingly entered into a long-term agreement – the 2019 Supply Agreement – containing a New Jersey choice-of-forum clause." *Id.* at 5.

Judge Wang rejected Morton Williams's argument that Village could not enforce the Supply Agreement's forum-selection clause, noting that "where resolution of a contract claim is integral to resolution of a tort claim, even non-signatories may be bound by a forum-selection clause in the contract at issue." *Id.* at 4 n.2. She added that "Village's standing to raise the forum-selection clause issue is irrelevant" because the Court could transfer venue *sua sponte* and Village did not oppose transfer. *Id.* Judge Wang also recognized as a matter of "both convenience to the parties and judicial economy" that the New York Action and the New Jersey Action were "inextricably linked together." *Id.* at 6. She stated that Wakefern, although "not a party to this action, . . . is an integral party to any complete resolution of [Morton Williams's] claims against Village." *Id.* at 5.

### III. Morton Williams's Objections

Morton Williams argues that, in analyzing Village's transfer motion under Section 1404(a) and the first-to-file rule, Judge Wang erred by: (1) applying the forum-selection clause in the Supply Agreement; (2) failing to consider "the extensive litigation history" in this case; and (3) failing to consider forum-shopping efforts by Village and Wakefern. Obj. at 11-15. Morton Williams claims that, by failing to consider these "key factors," Judge Wang improperly

6

balanced the relevant Section 1404 factors in granting the transfer motion. *Id.* at 16-17. The Court addresses each supposed error in turn.

### A. The Forum-Selection Clause

Morton Williams first argues that the forum-selection clause in the Supply Agreement does not apply to the New York Action because: (1) the clause does not encompass the litigation between Morton Williams and Village; and (2) Village waived any right to enforce the clause by failing to raise it sooner. *Id.* at 13-14; *see* ECF No. 87 ("Opp.") at 11-20. The Court finds both arguments unpersuasive.

#### 1. *The Tortious-Interference Claim Between Morton Williams and Village Falls Under the Forum-Selection Clause*

Under the applicable forum-selection clause, "the parties agree that all claims and disputes arising out of or in connection with this agreement shall be adjudicated in" New Jersey state or federal court. Supply Agreement § 14(a) (capitalization omitted). The Court agrees with Judge Wang that Village can enforce the forum-selection clause even as a non-signatory to the Supply Agreement. "[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Miller-Rich v. Altum Pharms. Inc.*, No. 22-cv-03473 (JLR), 2023 WL 8187875, at *11 (S.D.N.Y. Nov. 27, 2023) (quoting *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009)). The Second Circuit has "permitted non-signatories to an agreement to be bound by, *and to enforce*, forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Fasano v. Li*, 47 F.4th 91, 103 (2d Cir. 2022) (emphasis added). *Fasano* "identified several circumstances that could trigger such a result," including where (1) the non-signatories were "closely related" to the signatory; (2) the non-signatories "had interests in the

litigation that were directly related to, if not predicated upon those of the signatories"; and (3) the claims against the non-signatories were "integrally related" to the claims against the signatories. *Id.* (emphases, quotation marks, and citations omitted); *see Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) ("We hold that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory.").

Village satisfies each of these conditions. Village is "closely related" to Wakefern, a signatory to the Supply Agreement. Their relationship is "sufficiently close that [Village's] enforcement of the forum selection clause is 'foreseeable' to the signatory against whom [Village] wishes to enforce the forum selection clause," that is, to Morton Williams. *Magi XXI*, 714 F.3d at 723. By Morton Williams's own account, Village is "the second largest shareholder in Wakefern." Compl. ¶ 60. Owning "12.2% of Wakefern's outstanding stock," Village wields "direct influence over Wakefern's operations," "power over Wakefern through its presence on Wakefern's Board of Directors and various committees," and "substantial financial leverage over Wakefern" as "a major source of Wakefern's funding." *Id.* ¶¶ 59-61. Morton Williams further alleges that, but for Village's "exercise of . . . pressure" over the Wakefern Board, the Supply Agreement would have continued, and Morton Williams would have continued to purchase the Wakefern private-label products indefinitely. *Id.* ¶¶ 71-72. These allegations underscore the closeness of the relationship between Village and Wakefern. Thus, Morton Williams could have foreseen that its claim that Wakefern's second-largest shareholder pressured Wakefern to breach the Supply Agreement would be subject to the forum-selection clause in the Supply Agreement. *See Miller-Rich*, 2023 WL 8187875, at *11 (non-signatory shareholders who allegedly conspired with signatory company "fit within a recognized category of 'closely related' parties, namely,

parties that allegedly acted in concert with signatories"); *Cognizant Tech. Sols. Corp. v. Bohrer PLLC*, No. 21-cv-05340 (RA), 2022 WL 1720319, at *4-5 (S.D.N.Y. May 27, 2022) (finding sufficiently close relationship between signatory and non-signatory where they allegedly "at times acted in concert with one another and as one unit"); *H.A.L. NY Holdings, LLC v. Guinan*, No. 18-cv-02275 (ER), 2018 WL 5869648, at *5 (S.D.N.Y. Nov. 9, 2018) ("Courts have generally found parties to be 'closely related' . . . in situations where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory." (further quotation marks and citation omitted)); *Weingrad v. Telepathy, Inc.*, No. 05-cv-02024 (MBM), 2005 WL 2990645, at *6 (S.D.N.Y. Nov. 7, 2005) ("all defendants are closely related as [plaintiff] alleges they acted in concert to" injure plaintiff); *cf. Fasano*, 47 F.4th at 103-04 (finding non-signatories bound by forum-selection clause where they "were wholly owned and 60% owned by" the signatory's "largest stockholder").

Morton Williams relies, in its brief to Judge Wang, on cases where a signatory sought to enforce a forum-selection *against* a non-signatory, which is not the situation here. Opp. at 15-16. At issue in those cases was whether enforcement of the forum-selection clause was foreseeable to the non-signatory, not whether a *signatory* should have expected to be bound by the forum-selection clause to which it agreed. *See NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 350-52 (S.D.N.Y. 2020) (not reasonably foreseeable to non-signatories that they would be bound by a forum-selection clause where no allegations that they knew of the contract in general); *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 336 (S.D.N.Y. 2018) (describing the scenario in which a signatory seeks to enforce a contract provision against a non-signatory as "present[ing] a closer question" than the reverse scenario); *Prospect Funding*

9

*Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 325 (S.D.N.Y. 2017) (enforcement of forum-selection clause not foreseeable to non-signatory that played no role in the signatories' transactions and allegedly learned of agreements only months after they were finalized).

For substantially the same reasons, Village's interests in the New York Action are "directly related to, if not predicated upon those of" Wakefern. *Fasano*, 47 F.4th at 103 (quotation marks and citation omitted). As both a major shareholder and "a major source of Wakefern's funding," Compl. ¶ 61, Village's financial interests in the Supply Agreement and the ensuing litigation are "not only closely related, but also completely aligned," *Cognizant*, 2022 WL 1720319, at *4 (non-signatory law firm's "interest in having its bills paid" derived from signatory's right to indemnification for legal fees under the relevant contract). Therefore, it should have been foreseeable to Morton Williams that Village would seek to enforce the forum-selection clause contained in the Supply Agreement.

Morton Williams's claim against Village is also "integrally related" to its claims against Wakefern. *Fasano*, 47 F.4th at 103 (emphasis and citation omitted). To prevail on its claim that Village tortiously interfered with the Supply Agreement, Morton Williams necessarily must show that Wakefern breached the Supply Agreement. *See RBG Mgmt.*, 2023 WL 5976273, at *7. That these claims rise and fall with each other further confirms the closeness between Village and Wakefern. *See Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 64 (2d Cir. 2012) (summary order) (non-signatory can enforce a forum-selection clause where it was alleged to have "aided and abetted [the signatory's] breach of fiduciary duty by acting in concert with it to negligently misrepresent the nature and risks associated with certain securities that [the signatory] marketed and sold to [the plaintiff]"); *Renaissance Nutrition, Inc. v. Burkard*, No. 12-cv-00691, 2013 WL 1855767, at *7 (W.D.N.Y. Apr. 11, 2013) (allowing non-signatory

10

to enforce forum-selection clause where "the ultimate determination of plaintiff's tortious interference claim against defendant necessarily hinges on whether defendant intentionally and improperly caused [the signatory] to violate . . . his Distributor Agreement with plaintiff" (quotation marks omitted)), *report and recommendation adopted*, 2013 WL 1855785 (W.D.N.Y. Apr. 30, 2013). Morton Williams's choice to sue only Village in the New York Action, not Wakefern, "does not permit it to escape its contractual obligations." *Cognizant*, 2022 WL 1720319, at *5 (brackets and citation omitted).

For all these reasons, Village "enjoyed a sufficiently close nexus to the dispute" and to Wakefern "such that it was foreseeable [to Morton Williams] that [Village] would be bound." *Fasano*, 47 F.4th at 103. Therefore, Village can enforce the forum-selection clause against Morton Williams.

The forum-selection clause also covers the claim at issue in the New York Action. It provides that "all claims . . . arising out of or in connection" with the Supply Agreement are to be adjudicated in New Jersey. Supply Agreement § 14(a) (capitalization omitted). The Court rejects Morton Williams's claim that the reference to "the parties" limits the clause's scope to disputes between the signatories to the Supply Agreement, that is, between Morton Williams and Wakefern. *See* Opp. at 12-13. Nothing about this language cabins the scope of the clause to claims or disputes between Morton Williams and Wakefern. Moreover, Morton Williams's tortious-interference claim against Village arises out of the Supply Agreement because an element of that claim is whether Wakefern breached the Supply Agreement. *See Magi XXI*, 714 F.3d at 724 ("Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." (citation omitted)); *KnowYourMeme.com Network, Inc. v. Nizri*, No. 22-1322, 2023 WL 6619165, at *2 (2d Cir. Oct.

11

11, 2023) (summary order) (claim of interference with contractual relationship subject to forum-selection clause where claim "assume[s] the existence of both an enforceable agreement and enforceable rights between the parties pursuant to it" and where its resolution "requires an interpretation of the" contract). Because the resolution of the tortious-interference claim requires interpreting the Supply Agreement, the claim arises out of or is in connection with the Supply Agreement and therefore falls within the scope of the forum-selection clause.

    *2. Waiver*

Morton Williams next argues that Village cannot invoke the forum-selection clause "now, after litigating for over a year in this forum until it received an adverse decision from this Court." Opp. at 16; *see* Obj. at 13-14. The Court disagrees. While Village may have waived its ability to invoke the forum-selection clause to seek *dismissal* of the New York Action under Rule 12(b)(3) (an issue the Court does not decide), its ability to seek *transfer* under 28 U.S.C. § 1404 "is not properly considered a 'waivable' privilege." *Lehrer v. J&M Monitoring, Inc.*, No. 20-cv-06956 (KMK), 2022 WL 2392441, at *5 (S.D.N.Y. July 1, 2022) (quoting *Forsher v. J.M. Smucker Co.*, No. 15-cv-07180 (RJD), 2019 WL 235639, at *1 (E.D.N.Y. Jan. 16, 2019)); *see Benjamin v. Carusona*, No. 09-cv-09722 (RWS), 2010 WL 4448213, at *8 (S.D.N.Y. Nov. 5, 2010) ("Unlike a motion under Rule 12(b)(3), which is based on a forum's impropriety, a motion under § 1404(a) turns on considerations of convenience. Waiver of objection to improper venue does not preclude transfer pursuant to § 1404(a)."). Given the Court's authority to order a transfer under 28 U.S.C. § 1404 *sua sponte*, *Lehrer*, 2022 WL 2392441, at *5 (collecting cases), the existence of an enforceable forum-selection clause remained relevant to Judge Wang's considerations of convenience – regardless of whether or when Village raised the issue. Thus, as to Village's § 1404 motion, Morton Williams cannot claim waiver of the forum-selection clause.

### B.  Judicial Economy

Morton Williams also argues that Judge Wang failed to consider the inefficiency in transferring this year-old case because the parties have engaged in substantial discovery and the Court has already familiarized itself with the case and decided various motions.  *See* Obj. at 11-13.  This argument ignores the elephant in the room – the New Jersey Action – which Wakefern brought in New Jersey pursuant to the forum-selection clause in its agreement with Morton Williams.  Regardless of whether the forum-selection clause is applicable to the New York Action, Morton Williams does not suggest here that the claims and parties in the New Jersey Action are not subject to the forum-selection clause.  Given that the New Jersey action honors Wakefern and Morton Williams's bargained-for forum, *see* Supply Agreement § 14(a), transferring the New York Action so that it can be adjudicated with the New Jersey Action is plainly the efficient outcome, *see Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 854 (S.D.N.Y. 2017) ("It would be wasteful in the extreme if discovery and trial of these matters were to be duplicated in two different districts.  Courts have routinely recognized this principle in granting transfers under section 1404 where related claims were already proceeding in another district or had to be transferred to another district pursuant a forum selection clause." (footnote omitted)).

In any event, the Court agrees with Village that the parties have engaged in limited discovery thus far.  The parties agreed in December 2023 to stay discovery in this action pending resolution of the instant motion.  *See* ECF No. 91 at 1.  Before that point, the parties had taken only three fact depositions and were engaged in document discovery.  *See id.* at 1-2.  The parties have not filed their anticipated summary judgment motions or set a trial date.  In short, Morton Williams has identified no significant efforts undertaken in discovery or at trial that the New Jersey Court would need to duplicate.

### C. Forum Shopping

The Court also finds Morton Williams's claims of forum shopping overblown. Morton Williams makes much of the fact that Village litigated the New York Action for over a year before raising the forum-selection clause, suggesting that this timing revealed "a blatant attempt by Village to forum-shop, immediately following what it viewed as an unfavorable ruling on its motion to dismiss." Obj. at 15. As Judge Wang recognized in a conference on November 9, 2023, Village had good reason to wait for the Court's motion-to-dismiss ruling before moving to transfer the case: "if the motion to dismiss were successful, then maybe there[ would be] no need for further litigation." ECF No. 81 at 29:6-7. The same logic explains why Wakefern may have waited to bring the New Jersey Action. Without more, the Court does not reach any conclusions as to the motivation behind Village's choice to file the transfer motion after the Court's ruling on the motion to dismiss. *See Savarese v. City of New York*, No. 18-cv-05956 (ER), 2019 WL 2482387, at *6 (S.D.N.Y. June 13, 2019) (declining to find forum shopping where defendants moved to transfer case after receiving a favorable outcome in a case in a different court with the same parties and arising out of the same facts).

Morton Williams's reliance on *Williams Advanced Materials, Inc. v. Target Technology Co.*, No. 03-cv-00276, 2007 WL 2245886 (W.D.N.Y. Aug. 1, 2007), is misplaced. There, the district judge noted a "true motivation" of "judge-shopping" and reversed the magistrate judge's order transferring a first-filed action from the Western District of New York to the Southern District of California, where the second-filed action was pending. *Id.* at *2, *6-7. In *Williams*, however, it was the plaintiff who sought to transfer its own action to a plainly inconvenient forum across the country where it had recently secured favorable rulings. *Id.* at *5-6. To the *Williams* court, these circumstances betrayed "obviously improper motivations" of forum

14

shopping. *Id.* at *6. Here, in contrast, Village moved to transfer the New York Action from a forum it did not choose, shortly after the filing of a related action in New Jersey pursuant to a valid and enforceable forum-selection clause.

### D. Balancing of Section 1404(a) Factors

Finally, Morton Williams takes issue with Judge Wang's balancing of the factors under Section 1404(a). Obj. at 16-17. Morton Williams suggests that Judge Wang erred in relying on a single factor, the convenience of the parties, to grant transfer despite concluding that the plaintiff's choice of forum weighed in the other direction. *Id.* at 16. Yet Judge Wang's analysis was more generous to Morton Williams than the law required. In the presence of an applicable and enforceable forum-selection clause, "the plaintiff's choice of forum merits no weight" in the Section 1404(a) analysis and courts "should not consider arguments about the parties' private interests." *Atl. Marine*, 571 U.S. at 63-64. These private interests, including the convenience of the parties and their witnesses, are deemed in this context "to weigh entirely in favor of the preselected forum." *Id.* at 64. "As a consequence, a district court may consider arguments about public-interest factors only." *Id.* As to those factors, Morton Williams has raised no objection. Therefore, Judge Wang did not reach an erroneous outcome in concluding that the Section 1404(a) factors weighed in favor of transfer.

## CONCLUSION

For the reasons discussed above, the Court finds that Judge Wang's Transfer Order transferring this case to the District of New Jersey was not clearly erroneous or contrary to the law. Accordingly, Morton Williams's objections are overruled, and the Transfer Order is affirmed. The Clerk of Court therefore is respectfully directed to transfer this case to the United States District Court for the District of New Jersey.

Dated: April 11, 2024
       New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge